IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| v. | CIVIL ACTION NO. 3:22CV238-SA-RP |
| | **JURY TRIAL DEMANDED** |
| **KEYS ENTERPRISE, LLC; LEWIS KEYS, INDIVIDUALLY; and TINA KEYS, INDIVIDUALLY** | **DEFENDANTS** |

## COMPLAINT

This is an action by the United States of America against Keys Enterprise, LLC; Lewis Keys, Individually; and Tina Keys, Individually, to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover money for common law or equitable causes of action for payment by mistake and unjust enrichment based upon Defendants' receipt of Paycheck Protection Program ("PPP") funds to which they were not entitled.

## JURISDICTION AND VENUE

1. This action arises under the FCA and the common law.

2. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States is the plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3. The Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants can be found, reside, or transact business in this District, or have committed the alleged acts in this District.

4. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) as the subject transaction took place in the Northern District of Mississippi – specifically the Oxford Division.

## PARTIES

5. Plaintiff, United States of America, guarantees and funds certain loans through the Small Business Administration ("SBA").

6. Defendant, Keys Enterprise, LLC's principal place of business is located in Ecru, Pontotoc County, Mississippi.

7. Defendant, Lewis Keys, is a resident of Union County, Mississippi.

8. Defendant, Tina Keys, is a resident of Union County, Mississippi.

## The Paycheck Protection Program

9. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

10. To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

11. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

12. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

13. The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

   a. That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

   b. That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

   c. That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

   d. That the funds would be used to retain workers and maintain payroll; or

    make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e. That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f. That not more than 40 percent of the loan proceeds may be used for non-payroll costs;

g. That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the Paycheck Protection Program;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

k. That the lender would confirm the eligible loan amount using the

documents submitted by the applicant.

## The False Claims Act

14. The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

15. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $12,537 to a maximum of $25,076. 28 C.F.R. § 85.5.

16. For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

(i) has actual knowledge of the information;

(ii) acts in deliberate ignorance of the truth or falsity of the information; or

(iii) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

17. Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

18. The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id*. § 3729(b)(4).

**FIRREA**

19.     Section 951 of FIRREA, as amended, codified at 12 U.S.C. § 1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence. 28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,073,133 for assessments after December 13, 2021 for which violations occurred after November 2, 2015). The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss. *Id*. The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly making a false statement for the purpose of influencing a decision by the Administrator of the SBA or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the PPP (15 U.S.C. § 645(a)).

20.     Section 1109(i) of the CARES Act provides that PPP loans are SBA loans for purposes of 15 U.S.C. § 645.

**Allegations**

21. It is a violation of the FCA to knowingly obtain an SBA-guaranteed PPP loan which is not supplied in compliance with the PPP Rules. Defendants were individually involved in obtaining nine PPP loans, all obtained in violation of the FCA.

22. On or about June 11, 2020, Defendant Keys Enterprise, LLC received a PPP loan in the amount of $51,000.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1). In the PPP loan application, Defendant Keys Enterprise, LLC, by and through its President Lewis Keys, misrepresented payroll costs, which were used in calculating the maximum loan amount for which Keys Enterprise was eligible. This misrepresentation caused Keys Enterprise to receive loan proceeds well in excess of what it would be entitled, if any at all. The SBA paid a 5% processing fee to Bank 1 in connection with the PPP loan disbursed to Keys Enterprise, LLC, plus interest.

23. On or about July 20, 2020, Defendant Keys Enterprise, LLC received a second PPP loan in the amount of $47,639.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 2). In the PPP loan application, Defendant Keys Enterprise, LLC, by and through its President Lewis Keys, misrepresented payroll costs, which were used in calculating the maximum loan amount for which Keys Enterprise was eligible. This misrepresentation caused Keys Enterprise to receive loan proceeds well in excess of what it would be entitled, if any at all. The SBA paid a 5% processing fee to Bank 2 in connection with the PPP loan disbursed to Keys Enterprise, LLC, plus interest.

24. On or about January 25, 2021, Defendant Keys Enterprise, LLC received a third PPP loan in the amount of $51,932.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1). In the PPP loan application, Defendant Keys Enterprise, LLC, by and through its President Lewis Keys, misrepresented payroll costs, which were used in calculating the maximum loan amount for which Keys Enterprise was eligible. This misrepresentation caused Keys Enterprise to receive loan proceeds well in excess of what it would be entitled, if any at all. The SBA paid a 5% processing fee to Bank 1 in connection with the PPP loan disbursed to Keys Enterprise, LLC, plus interest.

25. On or about February 3, 2021, Defendant Keys Enterprise, LLC received a fourth PPP loan in the amount of $51,932.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 2). In the PPP loan application, Defendant Keys Enterprise, LLC, by and through its President Lewis Keys, misrepresented payroll costs, which were used in calculating the maximum loan amount for which Keys Enterprise was eligible. This misrepresentation caused Keys Enterprise to receive loan proceeds well in excess of what it would be entitled, if any at all. The SBA paid a 5% processing fee to Bank 2 in connection with the PPP loan disbursed to Keys Enterprise, LLC, plus interest.

26. On or about March 13, 2021, Defendant Lewis Keys received a PPP loan in the amount of $20,833.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 3). In the PPP loan application, Lewis Keys misrepresented his payroll costs, which were used in calculating the maximum loan amount for which Lewis Keys was eligible. This misrepresentation caused Lewis Keys to receive loan proceeds well in excess of what he would be entitled, if any at all. The SBA paid a

$2,500.00 processing fee to Bank 3 in connection with the PPP loan disbursed to Lewis Keys, plus interest.

27. On or about April 7, 2021, Defendant Lewis Keys received a second PPP loan in the amount of $20,833.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 4). In the PPP loan application, Lewis Keys misrepresented his payroll costs, which were used in calculating the maximum loan amount for which Lewis Keys was eligible. This misrepresentation caused Lewis Keys to receive loan proceeds well in excess of what he would be entitled, if any at all. The SBA paid a $2,500.00 processing fee to Bank 4 in connection with the PPP loan disbursed to Lewis Keys, plus interest.

28. On or about April 17 2021, Defendant Lewis Keys received a third PPP loan in the amount of $20,833.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 3). In the PPP loan application, Lewis Keys misrepresented his payroll costs, which were used in calculating the maximum loan amount for which Lewis Keys was eligible. This misrepresentation caused Lewis Keys to receive loan proceeds well in excess of what he would be entitled, if any at all. The SBA paid a $2,500.00 processing fee to Bank 3 in connection with the PPP loan disbursed to Lewis Keys, plus interest.

29. On or about March 12, 2021, Defendant Tina Keys received a PPP loan in the amount of $20,833.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1). In the PPP loan application, Tina Keys misrepresented her payroll costs, which were used in calculating the maximum loan amount for which Tina Keys was eligible. This misrepresentation caused Tina Keys to receive loan proceeds well in excess of what she would be entitled, if any at all. The SBA

paid a $2,500.00 processing fee to Bank 1 in connection with the PPP loan disbursed to Tina Keys, plus interest.

30. On or about April 14, 2021, Defendant Tina Keys received a second PPP loan in the amount of $20,833.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1). In the PPP loan application, Tina Keys misrepresented her payroll costs, which were used in calculating the maximum loan amount for which Tina Keys was eligible. This misrepresentation caused Tina Keys to receive loan proceeds well in excess of what she would be entitled, if any at all. The SBA paid a $2,500.00 processing fee to Bank 1 in connection with the PPP loan disbursed to Tina Keys, plus interest.

31. Defendants knowingly used the PPP loan funds for unauthorized purposes.

32. Lewis Keys, on behalf of Keys Enterprise, LLC, applied for the loans under multiple NAICS codes: 541990 – All Other Professional, Scientific, and Technical Services; 517410 – Satellite Telecommunications; 443142 – Electronics Stores, each with varying employee numbers. The Mississippi Department of Employment Security confirmed that Keys Enterprise, LLC and any purported or associated businesses of Lewis Keys and Tina Keys had no Employee Wage Reports.

33. Upon information and belief, Defendant Lewis Keys submitted fraudulent tax information in support of his applications for individual PPP loans which were approved on March 13, 2021, April 7, 2021, and April 17, 2021. Furthermore, Lewis Keys received three individual PPP loans, when Keys Enterprise, LLC received three, in violation of the Affiliate Rule codified at 13 CFR § 121.301.

34. Upon information and belief, Defendant Tina Keys submitted fraudulent tax

information in support of her applications for individual PPP loans which were approved on March 12, 2021 and April 14, 2021. Furthermore, Tina Keys received two individual PPP loans, when Keys Enterprise, LLC received three, in violation of the Affiliate Rule codified at 13 CFR § 121.301.

35. Lewis Keys claimed to earn the requisite income during the covered period that would yield the amount of the loan received. In order to receive a loan of $20,833.00, the maximum loan amount, guidelines required Keys to have total eligible payroll costs of an average of at least $100,000.00 for the twelve months preceding the loan, separate and apart from the income generated by Keys Enterprise, LLC. Keys had no such eligible payroll costs.

36. Tina Keys claimed to earn the requisite income during the covered period that would yield the amount of the loan received. In order to receive a loan of $20,833.00, the maximum loan amount, guidelines required Tina Keys to have total eligible payroll costs of an average of at least $100,000.00 for the twelve months preceding the loan, separate and apart from the income generated by Keys Enterprise, LLC. Tina Keys had no such eligible payroll costs.

37. Even if Keys Enterprise, LLC were eligible for a PPP loan, which Plaintiff does not concede, Keys Enterprise, LLC would only be entitled to two PPP loans, at most. However, Lewis Keys and/or Tina Keys intentionally used two different addresses for Keys Enterprise, LLC in order to receive four loans instead of two.

38. False statements and documents were submitted to Banks 1, 2, 3, and 4 which misrepresented the amount of eligible payroll for Keys Enterprise, LLC, Tina Keys, and Lewis Keys' use of the loan proceeds. These false statements in the loan applications

were material to the payment of money by Banks 1, 2, 3, and 4 that was then reimbursed by the SBA, causing damages to the United States.

The United States realleges and incorporates all paragraphs above of this Complaint as fully set forth herein in all Counts listed below:

### COUNT I
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

39. Keys Enterprise, LLC; Lewis Keys; and Tina Keys knowingly requested and obtained a total of nine PPP loans for an amount they were not entitled to, in violation of the PPP Rules.

40. By virtue of this false claim, the United States was damaged for the full amount of the PPP loans and the processing fees paid to Banks 1, 2, 3, and 4, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for the violation.

### COUNT II
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements

41. Keys Enterprise, LLC; Lewis Keys; and Tina Keys knowingly submitted a total of nine PPP loan applications that contained misrepresentations regarding payroll costs and intended use of PPP funds.

42. By virtue of this false statements, the United States was damaged for the full amount of the loans and the processing fees paid to Bank 1, 2, 3, and 4, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for the violation.

## COUNT III
### False Statements to the SBA
### 12 U.S.C. § 1833a (FIRREA)

43. This is a claim for civil penalties under FIRREA, 12 U.S.C. § 1833a, as amended.

44. Defendants, for the purposes of fraudulently obtaining nine federally guaranteed PPP loans, in violation 12 U.S.C. § 1833a, unlawfully, willfully, and knowingly made false statements or certifications to SBA Lenders and the SBA in violation of 15 U.S.C. § 645(a) .

45. Lewis Keys and Tina Keys signed the PPP loan agreements, thereby knowingly and falsely represented that Keys Enterprise, LLC, Lewis Keys, and Tina Keys would "comply with all SBA guidance" as it applied to the PPP loans.  These false statements were knowingly false and made for the purpose of influencing the SBA to obtain PPP loan proceeds in violation of 15 U.S.C. § 645(a) and 13 C.F.R. § 121.301.

46. Because of Defendants' acts, they are liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a(b).

## COUNT IV
### Unjust Enrichment

47. This is a claim for the recovery of monies by which Defendants have been unjustly enriched.

48. By obtaining from the United States, through Banks 1, 2, 3, and 4, funds to which they were not entitled, Defendants were unjustly enriched and the United States is entitled to damages in an amount of $306,668.00 plus loan processing fees, plus interest, together with any other damages to be determined at trial.

## COUNT V
**Payment by Mistake**

49. This is a claim for the recovery of monies the United States paid directly or indirectly to Defendants as a result of mistaken understandings of fact.

50. The United States' mistaken understandings of fact were material to its decision to approve the PPP loans provided to Defendants.

51. The United States, acting in reasonable reliance on the truthfulness of the statements contained in the PPP loan applications, approved the loans to Defendants to which they were not entitled.

52. Thus, the United States is entitled to recoup the amount of the PPP loans plus any other amounts to be determined at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

The United States requests that the Court enter judgment against Keys Enterprise, LLC, Lewis Keys, and Tina Keys jointly and severally and grant the following relief:

(a) On Counts I and II (False Claims Act), awarding the United States treble the damages it sustained for (1) the $306,668.00 loans plus one percent interest applied from the date of the loans and (2) the processing fees paid by the United States to Banks 1, 2, 3, and 4, together with the maximum civil penalties allowed by law;

(b) On Count III (FIRREA), awarding the United States civil penalties pursuant to 12 U.S.C. § 1833a equal to, at minimum, the full amount of the PPP loans - $306,668.00;

(c) On Count IV (Unjust Enrichment), awarding the United States the amount by which Defendants were unjustly enriched;

(d) On Count V (Payment by Mistake), awarding the United States the amount mistakenly paid to Defendants;

(e) awarding the United States pre- and post-judgment interest, costs, and filing fees; and

(f) granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Fed. Rule Civ. P. 38.

Respectfully submitted this 7th day of November, 2022.

                                        Clay Joyner
                                        United States Attorney

                    By:    Stuart S. Davis (MSB #103224)
                           Assistant United States Attorney
                           900 Jefferson Avenue
                           Oxford, Mississippi 38655-3608
                           t: 662.234.3351
                           e: stuart.davis@usdoj.gov